KIENBAUM, Plaintiff, vs. HABERNY (Edward C.) and others, Defendants: HABERNY (Agnes) and another, Defendants and Appellants: THORNTON FINANCE CORPORATION, Defendant and Respondent.

*September 11—October 9, 1956.*

For the appellant Agnes Haberny there were briefs and oral argument by *Clark Dempsey* of Whitewater.

For the appellant Home Lumber & Fuel Company there were briefs and oral argument by *John J. Byrnes* of Elkhorn.

For the respondent there was a brief by *Morrissy, Morrissy & Zastrow* of Elkhorn, and oral argument by *E. C. Zastrow*.

STEINLE, J.    The complaint in the mortgage-foreclosure action commenced by the plaintiff, Carl Kienbaum, in March, 1954, alleged default in payment of the obligation of the defendants Edward C. Haberny and Mary Haberny, his wife, under a first mortgage executed to the plaintiff on December 17, 1951, conditioned for the payment of $18,000 as evidenced by a note in said sum.

The complaint also alleged that the defendant, Agnes Haberny, is the owner and holder of a second mortgage in the sum of $2,000 covering the real estate involved. It was alleged that this second mortgage was recorded in vol. 290 of mortgages on page 251 in the office of the register of deeds of Walworth county. It was further asserted that "the right, title, and interest of said Agnes Haberny is subject and subordinate to the lien of plaintiff's mortgage."

The complaint set forth the interests of the defendant, Thornton Finance Corporation, as owner and holder of a third mortgage against the property. Certain recording data

was specified. It was alleged that the records indicate an obligation of $7,389.02 due on said mortgage, but that the plaintiff had no knowledge as to the correct amount. The priority of plaintiff's mortgage to said mortgage was alleged.

Further, the complaint alleged the interest of the defendant Lloyd H. Sietam as holder of a judgment against Edward C. and Mary Haberny for $300.43 which was subject and subordinate to the mortgage of the plaintiff.

Judgments of the defendants, Bank of Oregon and John Peyer, against Edward C. and Mary Haberny, also subject to the prior rights of the plaintiff, were set forth in the complaint.

The complaint also alleged that the defendant, Home Lumber & Fuel Company, a corporation, appears to hold a mechanic's lien against the premises, filed October 13, 1953, and that said lien is subject to plaintiff's mortgage lien.

None of the defendants, excepting Thornton Finance Corporation, interposed an answer to the complaint. The answer alleged that $6,229.61 was due to said Finance Company. The answer was served only upon the plaintiff. The defendant, Sietam, by his attorneys, filed a notice of appearance. By its answer, Thornton Finance Corporation set up its third mortgage and its priority to all other interests asserted in the complaint excepting as to the first and second mortgages. Issue was not taken with the answer of Thornton Finance Corporation by any of the parties defendant. In its prayer for relief, the Finance Company petitioned that the remainder of any surplus, after the first and second mortgages had been fully paid, be delivered to it.

The matter came on for hearing before the court on April 21, 1954. The findings of fact and conclusions of law set forth the priority of the mortgages of Carl Kienbaum, plaintiff; Agnes Haberny, defendant; and Thornton Finance Corporation, defendant, in that order. Judgment was entered April 26, 1954. It directed that the surplus money

from the sale was subject "to further order of the court." Sheriff's sale of the mortgaged premises was held on June 29, 1955. Thornton Finance Corporation purchased the premises at the sale by offering the highest bid, to wit, $25,500. The amount due to the first mortgagee was $22,229.36. Confirmation of sale came on for hearing on July 18, 1955. The defendants Agnes Haberny and Home Lumber & Fuel Company appeared at said hearing. Agnes Haberny petitioned the court for the face amount of her note in the sum of $2,000 plus the interest thereon. Home Lumber & Fuel Company petitioned for its share of the surplus based upon a mechanic's lien filed subsequent to the execution of the mortgage to Thornton Finance Corporation for materials delivered by it to the mortgaged premises and which were visible to view in the structure of a fence, prior to the execution of said Finance Company's mortgage. The third mortgagee, Thornton Finance Company, made application to the court to disallow all claims for the surplus of the proceeds of the sale made by claimants not appearing and alleging the amount and priority of their claims in the foreclosure action. The sale was confirmed. On September 28, 1955, the court heard motions for the distribution of the surplus. Thornton Finance Corporation moved the court for an order directing payment to it of all surplus after $2,000 had been paid to Agnes Haberny in satisfaction of her mortgage, and after $223.73 had been paid to Lloyd H. Sietam in full payment of his judgment. On November 9, 1955, in its decision on motions for the surplus, the court ordered payment to Agnes Haberny in the sum of $2,000; payment to Lloyd H. Sietam in the sum of $223.73 and payment of the balance of $2,694.67 to Thornton Finance Corporation. Specifically the court determined that "Agnes Haberny and Home Lumber & Fuel Company failed to appear and exert or establish the face amount of their claim or priority in the foreclosure proceedings and are barred now in sharing in the surplus except in so far as their respective priority is agreed to and

admitted by Thornton Finance Corporation in its motion for disbursement of the surplus."

The question presented is whether the holder of the second mortgage and the holder of the mechanic's lien, both of whom were parties to the action, lost any of their rights to share in the surplus by failing to answer or make an appearance prior to the confirmation of the foreclosure sale.

The learned trial court was of the view that secs. 278.09 and 278.15, as published in the Wisconsin statutes of 1953 and 1955, show a clear legislative intent that equities in foreclosure should be determined in the foreclosure action, or in any event before the foreclosure sale. It is the position of the appellants that under the common law and the statutes, junior mortgage holders and other junior lien holders are not required in the protection of their interests to make claim for a division of surplus until such time as there has been a determination that a surplus exists.

Appellants and respondents in their printed and oral arguments have presented an abundance of citations to sustain their respective positions with reference to the issue raised.

A crucial consideration in the deciding of the issue is whether the provisions appearing in sec. 278.095 (4), Stats. 1933, were in existence and pertinent to the cause in 1955 when the order appealed from was rendered. Sec. 278.095 (4), Stats. 1933 (Court Rule XXV), provided:

"If there shall be any surplus paid into court by the sheriff or referee, any party to the action or any person not a party who had a lien on the mortgaged premises at the time of sale, may file with the clerk of court into which the surplus was paid, a notice stating that he is entitled to such surplus money or some part thereof, together with the nature and extent of his claim. The court shall determine the rights of all persons in such surplus fund by reference or by testimony taken in open court, but no such hearing shall be had in court or before a referee except upon eight days' notice to all persons that have appeared in the action or filed notice of claim

to such surplus money. If any such claimant shall not have appeared by attorney, notice of such hearing may be served by mail directed to the claimant at the place of his residence as stated in his notice of claim."

Ch. 541, Laws of 1935, was an act of the legislature which was designed in part to revise the portion of Title XXV relating to procedure in civil actions "for clarity and conciseness of language and simplifying and improving said proceedings and for harmonizing the substantive provisions with the procedural rules which are being revised by the supreme court." Wisconsin Session Laws, 1935, page 947 *et seq.*

Ch. 541, Laws of 1935, was introduced in the legislature on January 18, 1935, as Bill No. 50, S. The bill passed in the senate August 16, 1935. It was amended and passed in the assembly August 22, 1935. It was concurred in by the senate August 30, 1935. It was approved by the governor September 28, 1935, and was published October 2, 1935. The act provided for a delayed effective date of January 1, 1936.

Prior to the introduction of Bill No. 50, S., sec. 278.095 (4), Stats. 1933, was included under Title XXV.

In the revisor's note of sec. 369 of ch. 541, Laws of 1935, there appeared a statement that secs. 278.095 and 278.10, Stats., are consolidated, and renumbered sec. 278.10. However, the revised sec. 278.10 as appears in sec. 369 of ch. 541 failed to include any provision of sec. 278.095. Under sec. 373 of ch. 541, Laws of 1935 (Wisconsin Session Laws, 1935, pages 1058, 1059), sec. 278.095 (4), Stats. 1933, in its entirety was made a part of sec. 278.16 entitled "Notice and Report of Sale, Payment to Plaintiff; Confirmation of Sale" and was there numbered as sec. 278.16 (3). This change was the only one made in sec. 278.16 by the act.

Ch. 542, Laws of 1935, was originally introduced in the legislature on April 11, 1935, as Bill No. 314, S. Its purpose was to create sec. 235.68, Stats., relating to confirmation of

deeds. It was designated as emergency legislation and provided that no deed given to satisfy an indebtedness was to be effective unless confirmed by the court. Substitute Amendment No. 1, S., was introduced. Under it there was no requirement of confirmation by the court, but merely the filing of an affidavit by the grantees setting forth the agreement and their certification that the grantees understood their rights. As so amended the bill was passed in the senate September 11, 1935.

Amendment No. 1, A., to Bill No. 314, S. (as amended in the senate), was introduced in the assembly September 14, 1935. It added subsection 2 which amended secs. 278.16 and 278.17, Stats., and only with respect to change in the manner of delivering a sheriff's deed,—the delivery to be to the clerk of court instead of to the purchaser, and then delivery by such clerk to the purchaser after confirmation. Amendment No. 1, A., was adopted by the assembly September 17, 1935. The bill as amended was passed in the assembly September 18, 1935. As amended the bill was concurred in by the senate September 25, 1935. It was approved by the governor October 2, 1935, published October 3, 1935, and became effective October 4, 1935.

Bill No. 314, S., as passed, approved, and published, nowhere referred to provisions of sec. 278.095 (4), Stats., as such enactment had existed before or after the adoption of ch. 541, Laws of 1935. Ch. 542, Laws of 1935, in no manner referred to such provisions either as being continued or repealed.

Bill No. 50, S. (Revisor's bill), which became ch. 541, did not repeal sec. 278.095, Stats. By a note in the act it was stated that sec. 278.095 was to be renumbered as sec. 278.10, although that was not done. The provisions of sec. 278.095 (4) were incorporated under sec. 278.16 (3).

There is nothing in the history of the enactments of chs. 541 and 542, Laws of 1935, to indicate an intention

by the legislature to repeal sec. 278.095, Stats. 1933. It is to be noted that after Bill No. 314, S. (as amended and adopted by the senate), reached the assembly, it was amended by Substitute Amendment No. 1, A., which added subsection 2, the effect of which was to amend secs. 278.16 and 278.17 in certain particulars. Substitute Amendment No. 1, A., was adopted by the assembly September 17, 1935. The Revisor's bill, No. 50, S., which placed sec. 278.095 (4) in sec. 278.16 (3) had passed the senate on August 16, 1935, and the assembly on August 22, 1935, and on September 17, 1935, when Substitute Amendment No. 1, A., was adopted in the assembly, had as yet not become law. It appears that Substitute Amendment No. 1, A., to Bill No. 314, S., intended to amend secs. 278.16 and 278.17 as they had existed in 1933. Bill No. 50, S., expressly retained the provisions of sec. 278.095 (4) as existed in 1933, but merely renumbered the section as sec. 278.16 (3). Nowhere does Substitute Amendment No. 1, A., to Bill No. 314, S., indicate intention to change provisions of sec. 278.095, Stats. 1933.

The doctrine of implied repeal is not favored, and an earlier act will be considered to remain in force unless it is so manifestly inconsistent and repugnant to the later act that they cannot reasonably stand together. *Lenfesty v. Eau Claire* (1944), 245 Wis. 220, 227, 13 N. W. (2d) 903; *Milwaukee County v. Milwaukee Western F. Co.* (1931), 204 Wis. 107, 112, 235 N. W. 545; *Pabst Corp. v. Milwaukee* (1926), 190 Wis. 349, 208 N. W. 493; *Madison v. Southern Wisconsin R. Co.* (1914), 156 Wis. 352, 146 N. W. 492.

In *McLoughlin v. Malnar* (1941), 237 Wis. 492, 297 N. W. 370, it was said that while repeals by implication are recognized, they do not result except when the intent of the legislature clearly appears.

We are constrained to hold that it was not the intention of the legislature by its enactment of ch. 542, Laws of 1935, to repeal the provisions of sec. 278.095 (4), Stats. 1933.

Sec. 278.095 (4), Stats. 1933, is not inconsistent and repugnant to the provisions of ch. 542, Laws of 1935. Clearly these two enactments can reasonably stand together. The provisions appearing in sec. 278.095 (4), Stats. 1933, were not repealed, either expressly or by implication. Their omission in the published statutes since 1935 was clearly a matter of oversight. They were in effect during the course of the instant litigation and remain in effect at this time. Had the trial court's attention been directed to the legislative history of sec. 278.095 (4), Stats. 1933, as such was furnished to this court and as it is set forth in this opinion, we believe that the claims of the appellants would have been allowed below. In any event it is considered that under the provisions of sec. 278.095 (4), Stats. 1933, which were in effect during the course of the litigation of this cause below, the claims of the appellants were timely filed and ought to have been allowed. In view of this conclusion we deem it unnecessary to determine other considerations presented on this appeal.

*By the Court.*—The order disbursing surplus from which this appeal was taken is reversed, with directions to modify same so as to allow the respective claims of Agnes Haberny and Home Lumber & Fuel Company.