CITY OF GREENFIELD, Appellant, v. LOCAL 1127, affiliated with District Council 48 of the American Federation of State, County, and Municipal Employees and another, Respondents.

*April 14—May 9, 1967.*

For the appellant there was a brief and oral argument by *Charles G. Panosian,* city attorney.

For the respondent Local 1127 there was a brief by *Goldberg, Previant & Uelmen,* and oral argument by *John S. Williamson, Jr.,* all of Milwaukee.

For the respondent Wisconsin Employment Relations Board there was a brief by *Bronson C. La Follette,* attorney general, and *Beatrice Lampert,* assistant attorney general.

WILKIE, J.    The first issue raised on this appeal is whether police officers in the city of Greenfield have the right to be represented in fact-finding pursuant to sec. 111.70 (4) (j), Stats., by a labor union affiliated with a national labor organization.

In 1959 the legislature enacted ch. 509, Laws of 1959, which created sec. 111.70, Stats.  The new law granted

to municipal employees the right to organize and join labor organizations, and also defined proper bargaining practices by both parties to a municipal-bargaining agreement. City and village policemen were specifically excepted from the definition of municipal employee,[1] and sec. 111.70 did not grant to them the right to organize or be represented by a labor organization for the purposes of municipal bargaining.

In 1961 the legislature enacted ch. 663, Laws of 1961, which created sub. (4) of Wisconsin statute 111.70. Sub. (4) provides for the resolution of municipal employment disputes by fact-finding. Sec. 111.70 (4) (e) provides that fact-finding may be initiated (1) when the parties become deadlocked after reasonable negotiation, or (2) when the employer or union refuses to meet or negotiate in good faith to arrive at settlement. Sub. (4) (f) provides the mechanism for establishing fact-finding including the appointment of a qualified disinterested person or three-member panel. Sub. (4) (g) describes how the fact-finding hearings are to be conducted and describes what is to be the effect of fact-finding. At the conclusion of fact-finding, the fact finder makes recommendations for the solution of the dispute. These recommendations are not binding on either party.[2]

The parts of sec. 111.70, Stats., as effected by the 1959 and 1961 legislation, which are pertinent to this controversy are as follows:

"111.70 **Municipal employment.** (1) DEFINITIONS. When used in this section:

"(a) 'Municipal employer' means any city, county, village, town, metropolitan sewerage district, school district or any other political subdivision of the state.

"(b) 'Municipal employe' means any employe of a municipal employer except city and village policemen, sheriff's deputies, and county traffic officers.

---

[1] Sec. 111.70 (1) (b), Stats.

[2] Sec. 111.70 (4) (g), Stats.; The Strike and its Alternative in Public Employment, 1966 Wisconsin Law Review, 549, 571.

"(c) 'Board' means the Wisconsin employment relations board.

"(2) RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, to affiliate with labor organizations of their own choosing and the right to be represented by labor organizations of their own choice in conferences and negotiations with their municipal employers or their representatives on questions of wages, hours and conditions of employment, and such employes shall have the right to refrain from any and all such activities.

"(3) PROHIBITED PRACTICES. (a) Municipal employers, their officers and agents are prohibited from:

"1. Interfering with, restraining or coercing any municipal employe in the exercise of the rights provided in sub. (2).

"2. Encouraging or discouraging membership in any labor organization, employe agency, committee, association or representation plan by discrimination in regard to hiring, tenure or other terms or conditions of employment.

"(b) Municipal employes individually or in concert with others are prohibited from:

"1. Coercing, intimidating or interfering with municipal employes in the enjoyment of their legal rights including those set forth in sub. (2).

"2. Attempting to induce a municipal employer to coerce, intimidate or interfere with a municipal employe in the enjoyment of his legal rights including those set forth in sub (2).

"(c) It is a prohibited practice for any person to do or cause to be done, on behalf of or in the interest of any municipal employer or employe, or in connection with or to influence the outcome of any controversy, as to employment relations, any act prohibited by pars. (a) and (b).

"(4) POWERS OF THE BOARD. The board shall be governed by the following provisions relating to bargaining in municipal employment:

". . .

"(e) *Fact finding.* Fact finding may be initiated in the following circumstances: 1. If after a reasonable period of negotiation the parties are deadlocked, either party or the parties jointly may initiate fact finding; 2. Where an employer or union fails or refuses to meet and

negotiate in good faith at reasonable times in a bona fide effort to arrive at a settlement.

"...

"(g) *Same.* The fact finder may establish dates and place of hearings which shall be where feasible in the jurisdiction of the municipality involved, and shall conduct said hearings pursuant to rules established by the board. Upon request, the board shall issue subpoenas for hearings conducted by the fact finder. The fact finder may administer oaths. Upon completion of the hearings, the fact finder shall make written findings of fact and recommendations for solution of the dispute and shall cause the same to be served on the municipal employer and the union.

"(h) *Parties.* 1. Proceedings to prevent prohibitive practices. Any labor organization or any individual affected by prohibited practices herein is a proper party to proceedings by the board to prevent such practice under this subchapter.

"2. Fact finding cases. Only labor unions which have been certified as representative of the employes in the collective bargaining unit or which the employer has recognized as the representative of said employes shall be proper parties in initiating fact finding proceedings. Cost of fact finding proceedings shall be divided equally between said labor organization and the employer.

"...

"(j) *Personnel relations in law enforcement.* In any case in which a majority of the members of a police or sheriff or county traffic officer department shall petition the governing body for changes or improvements in the wages, hours or working conditions and designates a representative which may be one of the petitioners or otherwise, the procedures in pars. (e) to (g) shall apply. Such representative may be required by the board to post a cash bond in an amount determined by the board to guarantee payment of one-half of the costs of fact finding."

The effect of the 1961 enactment was to inaugurate fact-finding for all municipal employees. Importantly, fact-finding for municipal employees other than members

of a police or sheriff or traffic officer department may be enforced by prohibited practice procedures.[3] In disputes involving such law-enforcement personnel no such enforcement procedures may be used. Nevertheless, ch. 663, Laws of 1961, inaugurated fact-finding for all municipal employees, including law-enforcement personnel; not only for those municipal employees vested with collective-bargaining rights by the 1959 law.

Under sec. 111.70 (4) (j), Stats., policemen seeking fact-finding are entitled to designate "a representative which may be one of the petitioners or otherwise." The language "or otherwise" is broad. It is ambiguous. We conclude that, in view of the entire purpose of the fact-finding legislation, a broad construction should be given to the language, entitling the policemen to designate a labor union affiliated with a national labor organization as their representative in fact-finding. Such a construction is consistent with our construction that an organization, such as a labor union, was intended by the legislative language; if an individual were intended the legislature would have said "a representative who."

We now reach a second issue in the case, namely, whether, even though the Greenfield police are entitled to designate Local 1127 as their fact-finding representative, these policemen have a right to join that union. The trial court concluded that Chief Wahlen's order forbidding the Greenfield police from joining a labor union affiliated with a national labor organization was inconsistent with the right to designate the union as its representative, that the order contravened sec. 111.70 (4) (j), Stats., and was void.

We conclude otherwise. We agree that sec. 111.70 (4) (j), Stats., gives the policemen the right to designate an international labor union as their representative for fact-

---

[3] Sec. 111.70 (4) (h) 1, Stats.

finding. It does not follow, however, that the policemen are entitled to join that union. Sec. 111.70 (1) and (2) establish the right of municipal employees to affiliate with labor organizations of their own choosing and to conduct collective bargaining through those organizations. However, municipal employees are defined by the 1959 law to exclude city and village policemen, sheriff's deputies, and county traffic officers.[4]

To interpret sec. 111.70 (4) (j), Stats., as broadly as the trial court to guarantee the right of law-enforcement personnel to have all of the rights given to other municipal employees under sec. 111.70 (1)–(3) would constitute a repeal of sec. 111.70 (1) (b). A well-established rule of statutory construction is that repeals by implication are not favored.[5] The new law in 1961 did not specifically repeal the provisions of sec. 111.70 (1) (b) as embodied in the 1959 law. It does not accomplish this by implication. Thus we conclude that although the policemen did have the right to designate the respondent union as their fact-finding representative, the individual policemen did not enjoy the right to join that union. Therefore, the judgment of the trial court, although correct in concluding that the policemen had the right to designate the union as their fact-finding representative, was incorrect in voiding the police chief's order commanding that the members of his department refrain from in any way affiliating by reason of membership with an international labor organization.

The rights of the policemen to fact-finding or to other labor rights are established by statute. At common law

[4] Sec. 111.70 (1) (b), Stats.

[5] *Kienbaum v. Haberny* (1956), 273 Wis. 413, 78 N. W. (2d) 888; *State ex rel. Peterson v. County Court* (1961), 13 Wis. (2d) 37, 108 N. W. (2d) 146; *Union Cemetery v. Milwaukee* (1961), 13 Wis. (2d) 64, 108 N. W. (2d) 180; 82 C. J. S., Statutes, p. 479, sec. 288.

municipal policemen and firemen are not permitted to join labor organizations or unions which admit to membership persons other than members of the department. The common-law rule is articulated in 31 A. L. R. (2d) as follows:

"The right of public employees in general to join or become members of labor units is becoming increasingly recognized, with the one marked exception that municipal firemen and policemen, . . . are barred from labor union membership. Policemen and firemen are denied union membership because they owe undivided allegiance to the public, and because it is absolutely necessary to the maintenance of discipline in the two services that public authorities have complete control over them." [6]

Although this common-law rule poses an absolute ban against membership in a union by policemen for any reason, by statute, local associations of policemen for bargaining purposes have been allowed.[7] Where no legislative enactments provide for the right to join unions, orders prohibiting policemen from becoming or remaining union members have frequently been upheld or approved.[8]

More and more law-enforcement officials are expected to render improved service under difficult circumstances. They should be able to work for the improvement of their own working conditions. As one device toward

---

[6] Anno. Union Organization and Activities of Public Employees, 31 A. L. R. (2d) 1142, 1149.

[7] *Perez v. Board of Police Commissioners* (1947), 78 Cal. App. (2d) 638, 178 Pac. (2d) 537; *Local 201 v. Muskegon* (1963), 369 Mich. 384, 120 N. W. (2d) 197.

[8] *Perez v. Board of Police Commissioners, supra,* footnote 7; *Jackson v. McLeod* (1946), 199 Miss. 676, 24 So. (2d) 319; *King v. Priest* (1947), 357 Mo. 68, 206 S. W. (2d) 547; *Hutchinson v. Magee* (1923), 278 Pa. 119, 122 Atl. 234; *Local 201 v. Muskegon, supra,* footnote 7; *Fraternal Order v. Police Commissioners* (1943), 306 Mich. 68, 10 N. W. (2d) 310.

this end, the legislature has wisely provided for their use of fact-finding.

*By the Court.*—Judgment modified by removing the portion thereof adjudging and decreeing the order of Police Chief Howard Wahlen, dated July 25, 1965, null and void; as modified, judgment affirmed and cause remanded for further proceedings consistent with this opinion.