CITY OF MEDFORD, Respondent, v. LOCAL 446, affiliated with Chauffeurs, Teamsters, Warehousemen & Helpers Union, and another, Appellants.

*No. 232. Argued April 1, 1969.—Decided May 9, 1969.*
(Also reported in 167 N. W. 2d 414.)

582

584

For the appellant Local No. 446, affiliated with Chauffeurs, Teamsters, Warehousemen & Helpers Union, there was a brief by *Goldberg, Previant & Uelmen* and *John S. Williamson, Jr.,* all of Milwaukee, and oral argument by *Mr. Williamson.*

For the appellant Wisconsin Employment Relations Commission the cause was argued by *William H. Wilker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief and oral argument by *John O. Olson,* city attorney.

A brief *amicus curiae* was filed by *Lawton & Cates* and *Bruce F. Ehlke* and *Robert C. Kelly,* all of Madison, for the Wisconsin Professional Policeman's Association, the Wisconsin Council of County and Municipal Employees, AFSCME (AFL-CIO).

WILKIE, J. The primary issue on this appeal can be stated as follows: Do the employee members of the police force of the city of Medford have a right to designate a labor union with national affiliation as their representative for conferring and negotiating with the city of Medford Police and Fire Commission for changes or improvements in wages, hours or working conditions?

To resolve this issue we must construe sec. 111.70, Stats., and determine the effect of *Greenfield v. Local 1127* [1] on the question.

Sec. 111.70, Stats., contains the entire statutory framework of Wisconsin's municipal labor relations program. Sec. 111.70, subs. (1) through (3), was created by ch. 509, Laws of 1959, and spells out the right of municipal employees, except law enforcement personnel,[2] to join a union and to be represented in conferences and negotiations.[3]

Sub. (4) of sec. 111.70, Stats., was enacted by ch. 663, Laws of 1961, and gave municipal employees, including law enforcement personnel, the right to petition for fact-finding under two circumstances: "1. If after a reasonable period of negotiation the parties are deadlocked . . . ; 2. Where an employer or union fails or refuses to meet and negotiate in good faith at reasonable times in a bona fide effort to arrive at a settlement." [4] The provisions of this subsection and sub. (4) (f) and (g) are made applicable to personnel relations in law enforcement by sec. 111.70 (4) (j), which provides:

"(j) *Personnel relations in law enforcement.* In any case in which a majority of the members of a police or sheriff or county traffic officer department shall petition the governing body for changes or improvements in the wages, hours or working conditions and designates a representative which may be one of the petitioners or otherwise, the procedures in pars. (e) to (g) shall apply. Such representative may be required by the board to post a cash bond in an amount determined by the board to guarantee payment of one-half of the costs of fact finding."

Examining this statutory language it is clear that the legislature contemplated that in petitioning for changes or improvements in wages, hours or working conditions,

---

[1] (1967), 35 Wis. 2d 175, 150 N. W. 2d 476.
[2] Sec. 111.70 (1), Stats.
[3] Sec. 111.70 (2), Stats.
[4] Sec. 111.70 (4) (e), Stats.

law enforcement personnel could designate a representative, and that the procedures of sec. 111.70 (4) (e) through (g) would apply as in the case of other municipal employees.

In *Greenfield,* this court determined that a labor union with national affiliation was a "representative" within the meaning of par. (j) and could represent police officers in fact finding.

"Under sec. 111.70 (4) (j), Stats., policemen seeking fact-finding are entitled to designate 'a representative which may be one of the petitioners or otherwise.' The language 'or otherwise' is broad. It is ambiguous. We conclude that, in view of the entire purpose of the fact-finding legislation, a broad construction should be given to the language, entitling the policemen to designate a labor union affiliated with a national labor organization as their representative in fact-finding. Such a construction is consistent with our construction that an organization, such as a labor union, was intended by the legislative language; if an individual were intended the legislature would have said 'a representative who.' " [5]

The express provisions of sec. 111.70 (4) (e), Stats., make it clear that the legislature intended that this representative confer and negotiate with municipal employers.

The words "party" and "union" in par. (e) necessarily refer in par. (j) either to a majority of policemen *or* to their representative in that, apart from the WERC, there is no other individual or group mentioned in par. (j). Furthermore, if these words refer to a representative, as they seem to do, they do so without regard to whether or not that representative is a labor union. It follows that if the terms "party" and "union" refer to the representative, then the legislature intended the representative to negotiate with the municipal employer because only as a negotiator could it be one of the parties deadlocked and only as a negotiator could it "refuse to meet and negotiate in good faith."

---

[5] *Supra,* footnote 1, at page 183.

Local 446 correctly argues that construing "party" and "union" to refer to a representative is consistent with par. (j) because that paragraph requires a majority of policemen to designate their representative *before* the conditions of fact-finding arise, *i.e.,* before the parties are deadlocked or before an "employer or union fails or refuses to meet and negotiate." The statute *does not* provide that a majority of policemen shall designate their representative after the parties are deadlocked or after the "employer or union" refuse or fail to meet and negotiate.

Furthermore, in sec. 111.70 (4) (h) 2, Stats., the legislature emphasized that labor unions as representatives of municipal employees were proper parties to initiate fact-finding. That section provides as follows:

"2. Fact finding cases. Only labor unions which have been certified as representative of the employes in the collective bargaining unit or which the employer has recognized as the representative of said employes shall be proper parties in initiating fact finding proceedings. Cost of fact finding proceedings shall be divided equally between said labor organization and the employer."

While this legislative language is not applicable to representatives of law enforcement personnel, it nevertheless reveals that the words "parties" and "union" in par. (e) refer to the majority representative and not to a majority of employees in the collective bargaining unit.

Such a construction conforms with the approach taken by this court in *Whitefish Bay v. Wisconsin Employment Relations Board.*[6] In that case the Policemen's Protective and Benevolent Association of Whitefish Bay, the representative chosen by a majority of the policemen of the village of Whitefish Bay, negotiated with that municipality. When a deadlock developed, the association petitioned for fact-finding. Since only a party can petition for fact-finding when a deadlock develops, it would seem

---

[6] (1967), 34 Wis. 2d 432, 149 N. W. 2d 662.

that the WERC and this court assumed that the association, as the representative of a majority of the policemen, was a "party" within the meaning of par. (e).

Certain practical considerations support the decision of the WERC, in the instant case, that the legislature intended the designated representative of the policemen, whether or not it was a union, to negotiate and confer with the municipal employer and to petition for and go to fact-finding if the municipal employer refused to confer and negotiate or a deadlock developed. In larger Wisconsin communities, such as Milwaukee, Green Bay, and Madison, a majority of policemen within a department cannot, as a practical matter, negotiate directly with their employer—they can only negotiate through a representative. Only in smaller communities such as the city of Medford could negotiations between the municipality and a majority of its policemen be workable.

Both the circuit court and the respondent, city of Medford, rely heavily upon their interpretation of *Greenfield*. They concluded that in that case this court had the opportunity to pass on the question of representation in conferences and negotiations but deliberately limited its opinion to representation at fact-finding. The circuit court's opinion provides, in part, as follows:

". . . We are satisfied that in view of the opportunity given the supreme court to pass upon the question now before us, its answer, limited as it is to fact-finding alone, cannot be interpreted as one even implicitly giving approval to labor union representation at the bargaining table. The court had the opportunity, in view of the statement of issue No. 2 by Greenfield, concurred in by Local 1127, to say clearly and unmistakably that labor union representation is or is not permitted *at the bargaining table*. The court did not do so and we must believe that in ruling on union *representation* it withheld its opinion on union bargaining representation deliberately. A failure or refusal to negotiate by either the city or its police employes may come about through disputes other than over union representation at the bargaining table.

Thus the court's ruling, quoted above, is broad rather than narrow, and holds that whatever the differences between the parties that led to fact finding, police officers are entitled to have union representation at the fact finding hearings.

"We thus are satisfied that, with respect to labor union representation, Greenfield's solution . . . *was intended to do no more, than permit labor union representation in city-police fact finding. . . .*" (Emphasis in last paragraph added.)

However, such a conclusion is not justified. In *Greenfield,* a majority of policemen in the city of Greenfield authorized Local 1127, a chartered labor union affiliated with District Council 48 of the American Federation of State, County, and Municipal Employees, AFL-CIO, to represent them by signing application-for-membership blanks. Local 1127 advised the finance committee of the city of Greenfield that all of the personnel of the police department had joined Local 1127 and requested to be heard by the finance committee. The finance committee denied the request and refused to meet with Local 1127.

Thereafter, Local 1127 filed a petition for fact-finding. Following this, the police chief of the city of Greenfield issued an order which read in part as follows:

"[N]o member of the Greenfield Police Department [can] be in any way affiliated by reason of membership or otherwise with a labor union affiliated with a national labor organization." [7]

A hearing was held before the WERB (now WERC). The city argued that it had the right to refuse to negotiate and meet with the designated representative of the police force because sec. 111.70, Stats., prohibited policemen from joining a labor organization.

The WERB concluded that the order of the police chief was null and void, and that the policemen had a right to

---

[7] *Greenfield, supra,* footnote 1, at page 178.

be represented by Local 1127. Thereupon it ordered fact-finding pursuant to sec. 111.70 (4) (e), Stats.

The city of Greenfield then commenced an action for declaratory judgment. It asked the circuit court to declare that the policemen could not be represented in bargaining concerning wages, hours, and working conditions and that the WERB had no jurisdiction to hold hearings.

The circuit court affirmed the order of the WERB. The pertinent provisions of its judgment, for purposes of this appeal, are as follows:

IT IS ORDERED, ADJUDGED AND DECREED That the City of Greenfield, its representatives and agents, including but not limited to members of the Board of Fire and Police Commission and the Chief of Police, be and hereby are permanently prohibited and enjoined from in any way disciplining any member of the Police Department of the City of Greenfield pursuant to the order of the Police Chief or otherwise for selecting, authorizing, or designating Local 1127 *as its representative for the purpose of negotiating* on behalf of members of the Police Department of the City of Greenfield, excluding the Police Chief.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the order of Police Chief Howard Wahlen, Dated July 28, 1965, which stated: 'No member of the Greenfield Police Department shall be in any way affiliated by reason of membership or otherwise with a national union affiliated with a national organization', be and is hereby declared null and void and of no effect whatsoever." (Emphasis added.) (Appellant City of Greenfield appendix at page 132; record at page 147.) [8]

On appeal, the judgment of the circuit court was modified by this court as follows:

"Judgment modified by removing the portion thereof adjudging and decreeing the order of Police Chief Howard Wahlen, dated July 25, 1965, null and void; as modified, judgment affirmed and cause remanded for further proceedings consistent with this opinion." [9]

---

[8] 2978 Appendices and Briefs.

[9] *Greenfield, supra,* footnote 1, at page 186.

Thus, while this court found that policemen did not have a right to join a union, it nevertheless concluded that the petitioning labor union was entitled to fact-finding. Since fact-finding can be ordered only when one of the conditions in sec. 111.70 (4) (e), Stats., is met, it must be assumed that this court sustained the fact-finding order of the WERB because the finance committee of the city of Greenfield refused to meet and negotiate with Local 1127. Thus, *Greenfield* is authority in support of the order of the WERC here. Our holding here that law enforcement officers, while prohibited from joining a union, can nevertheless be represented by a union in conferences and negotiations with their municipal employer is a logical extension of *Greenfield*.

Although questions of law are involved in the statutory interpretation and application of sec. 111.70, Stats., and the rulings of the WERC are not conclusive upon this court as would be findings of fact on controverted evidence, we nevertheless quote with approval a portion of the WERC's memorandum decision supporting its order in the instant case:

"To adopt the City's contention that the Supreme Court's decision in Greenfield limited the participation of the Union to represent the police officers only in the formal fact finding proceeding would not effectuate the purpose and policy of the Act with respect to the limited rights granted to police, sheriffs' deputies and county traffic officers employed by various municipalities and counties in this State. Section 111.70 (4) (j) contains no limitation as to when a labor organization, which also represents other employes, may commence to act as the representative of police officers. The language of the statute infers that the designation of such a representative may occur simultaneously at such time as the police officers petition the City for changes and improvements in their wages, hours and working conditions. The statute does not indicate that such designation is conditioned on the occurrence of the circumstances leading to fact finding as set forth in section 111.70 (4) (e). To limit the participation of a union, which generally repre-

sents other employes, to represent police officers only in initiating and participating in the fact finding proceeding would be contrary to the intention and purpose of the statute with respect to the rights granted to police officers in attempting to meet and negotiate in good faith with their employer at reasonable times in a bona fide effort to arrive at a settlement with regard to their negotiations concerning their wages, hours and working conditions, and thus, to eliminate the need for a fact finding proceeding. We conclude that the participation of a 'representative' designated by the police officers may occur in the drafting of, and the submission of, a petition 'requesting changes or improvements in the wages, hours or working conditions,' as well as representing police officers at the 'bargaining table' in an effort to arrive at a resolution of the matters being negotiated, and thus to avoid a deadlock, which might lead to fact finding.

"Many fact finders have recommended that the parties return to the bargaining table with respect to various issues which were submitted to the fact finder for his recommendation. On occasion they have recommended that the representatives of the parties establish a study committee to review the particular area of disagreement in an attempt to reach a resolution of the issue. Assuming that in the instant matter the police officers themselves engaged in negotiations with the City and were unable to consummate an agreement on the issues, and determined to proceed to fact finding, in light of its position, the City would deem it proper that the police officers then designate the Union as their representative for the purpose of fact finding. Assume that the fact finder would recommend that the parties return to the bargaining table with respect to some of the issues. The City, if its position were consistent, must conclude that the police officers are not entitled to have the Union present at the bargaining table. This would be an absurd situation. The primary purpose of the statute is not to encourage fact finding but to encourage the resolution of disputes through collective bargaining. We can understand the desire of the police officers to have experienced representation in their collective bargaining with the City. The use of experienced negotiators in public, as well as private, employment bargaining eliminates many of the problems which may arise in the 'bargaining

process' which are not directly involved with substantive bargaining issues, and thus, at least eliminate deadlocks with respect to those matters.

"Neither the Circuit Court nor the Supreme Court decisions in Greenfield overruled the Commission's ruling with respect to the Commission's conclusion that there was no provision in sec. 111.70 which prohibited members of the police department from 'designating any type of employe organization as their designated representative to meet with their municipal employer on questions of wages, hours and conditions of employment,' and both courts sustained the Commission's determination that in Greenfield the grounds for fact finding existed in that Greenfield 'refused to meet and negotiate with the representative designated by the non-supervisory employes of the Police Department. . . .' "

The second issue presented on this appeal is: Are the findings of fact, conclusions of law, order and memorandum decision of the WERC in the matter of the petition of Chauffeurs, Teamsters, Warehousemen & Helpers Union, Local No. 446, to initiate fact-finding between said petitioner and city of Medford (police commission), lawful and within the jurisdiction of the WERC?

For the reasons stated in our discussion of the first issue, it follows that the answer to the second issue is in the affirmative.

The WERC contends that law enforcement personnel have a constitutionally protected right to present their requests, through a representative, to their governmental employer.[10] Amici curiae contend that law enforcement personnel have a constitutionally protected right to join a union. A consideration of these additional contentions is not necessary to this decision and we do not reach them.

*By the Court.*—Judgment and order reversed.

---

[10] *NLRB v. Jones & Laughlin* (1937), 301 U. S. 1, 57 Sup. Ct. 615, 81 L. Ed. 893; *Springfield v. Clouse* (1947), 356 Mo. 1239, 206 S. W. 2d 539, 542, 543.