THE HONORABLE, THE SENATE
By Senate Resolution 8 you have requested an opinion on the constitutionality of Senate Bill 130, 1971, which makes certain changes in sec. 450.11, Stats., relating to indecent articles. The resolution also requests an analysis of the constitutionality of present sec. 450.11, and further that I address the question as to the effect of passage of Senate Bill 130, 1971, on Wisconsin criminal laws dealing with fornication and adultery, namely, secs. 944.15 and 944.16, Stats.
Present sec. 450.11, Stats., originally enacted into law by the 1933 Legislature, regulates the advertising, display and sale of articles used either to procure a miscarriage or to prevent pregnancy. Senate Bill 130 proposes a logical reorganization of this statute by separating the regulation of articles to procure miscarriages from the regulation of articles to prevent pregnancy by creating sec. 450.115, Stats., to control the latter type of articles.
At the outset, it should be noted that the proposed law prohibits entirely the sale by any person of indecent articles, that is, articles such as drugs, instruments or devices to procure a miscarriage. Present law permits the purchase of such articles from a pharmaceutical house or a physician. This proposed change in the law, in practical effect, outlaws therapeutic abortions now permitted under sec. 940.04 (5), Stats. The indicated problem arises from the fact that the term "miscarriage" may be used interchangeably with the term "abortion." Although there is a technical difference *Page 194 
as to the age of the fetus in whether the term "miscarriage" or "abortion" is used, the law regards the two terms as being practically synonymous. 1 Am. Jur. 2d, Abortion, § 1. Also see secondary definition of "miscarriage" as meaning "abortion" contained in Webster's Seventh Collegiate Dictionary. Therapeutic abortions necessary to save the life of the mother are not only permitted under sec. 940.04 (5), but undoubtedly are constitutionally guaranteed by the due process clause of the Fourteenth Amendment of the United States Constitution.
I suspect that this change in the law proposed by Senate Bill 130 was unintentional and stems from the fact that the present statute treats two distinct subjects, miscarriage and contraceptives, in the same manner, coupled with the well-known fact that abortion-inducing drugs not only lack efficacy but are inherently dangerous. Nonetheless, whatever the reason, the proposed law entirely prohibits the sale of indecent articles. As applied to the sale of such items to a physician or surgeon, the law is unduly restrictive, and therefore unconstitutional.
Before turning to another aspect of the proposed bill, it should be noted that the term "miscarriage" is not defined consistently in lay, medical or legal dictionaries. For purposes of clarity it would be well to include a definition of this word in any proposed legislation using it.
With the exception of the difference discussed above and a significant change to be considered later, present sec. 450.11, Stats., and proposed sec. 450.115, Stats., of the bill essentially embody identical regulations with respect to the advertising and sale of contraceptive articles. Accordingly, the following capsule discussion of the constitutional highlights of the law applies to the present statute and to Senate Bill 130.
Constitutional attacks on laws regulating the sale and advertising of contraceptives have been made primarily on the ground that such regulations are a deprivation of due process guaranteed by state constitutions and the Fourteenth Amendment of the United States Constitution. Regardless *Page 195 
of the form of the attack, courts have sustained the constitutional validity of such restrictions as having a rational and reasonable relationship to the purpose of protecting public health, safety, morals and welfare. 113 A.L.R. 970. State v. Arnold (1933), 217 Wis. 340,258 N.W. 843; 3 Am. Jur. 2d Advertising, § 6; Baird v. Eisenstadt (D. Mass. 1970), 310 F. Supp. 951.
The purpose of legislation which restricts the advertising and sale of contraceptive devices was well stated by a Massachusetts court many years ago in Commonwealth v. Allison (1917), 227 Mass. 57, 116 N.E. 265, 266:
"Manifestly . . . (the statutes) are designed to promote the public morals and in a broad sense the public health and safety. Their plain purpose is to protect purity, to preserve chastity, to encourage continence and self restraint, to defend the sanctity of the home, and thus to engender in the State and nation a virile and virtuous race of men and women."
If we were to end a constitutional analysis of the law relating to contraceptive devices at this point, there would be no question as to the validity of either the present statute or the proposed legislation. However, recent legal developments in this area indicate that the law is somewhat in a state of flux with a portion of the very matter under discussion presently in litigation before the Supreme Court of the United States. Baird v. Massachusetts, 91 S.Ct. 921 (probable jurisdiction noted on March 2, 1971). Accordingly, I will attempt to highlight recent legal considerations leading up to the present posture of the law relating to contraceptive devices.
In 1965 the Supreme Court of the United States struck down a Connecticut statute which prohibited entirely the use of contraceptives on the ground that the statute was an intrusion upon the right of marital privacy. Griswold v. State of Conn. (1965), 381 U.S. 479, 85 S.Ct. 1678,14 L.ed. 2d 510. It might be noted that the 1933 Wisconsin Legislature rejected the adoption of a similar law as discussed in State v. Arnold,supra.
The Griswold case has had its greatest impact on Massachusetts statutes relating to indecent articles. Commonwealth *Page 196 v. Baird (1969), 247 N.E.2d 574. In this case a lay person delivered a lecture to a group of unmarried persons. He used a display diagram of contraceptive devices for purposes of his lecture. At the conclusion of his lecture he gave a contraceptive device to a young, unmarried woman, whereupon he was prosecuted for both the exhibiting and disposing of contraceptive articles. On the basis of language in the Griswold case the Massachusetts court found that the statute prohibiting exhibition of contraceptive devices was unconstitutional as applied to the defendant whose display of contraceptive articles, the court said, was essential to graphic representation of the subject matter of his address. This ruling was grounded on the First Amendment right of free speech which the court held was not overcome by obscenity aspects of the situation in light ofRoth v. U.S. (1957), 354 U.S. 476, 489, 77 S.Ct. 1303, 1311,1 L.ed. 2d 1498.
The court did uphold the constitutionality of that portion of the statute which prohibited the giving away of a contraceptive device by a person other than a pharmacist or a physician.
The latter ruling was also made by a federal district court in Bairdv. Eisenstadt, supra. This ruling then was reversed by the Court of Appeals in 429 F.2d 1398 (1st Cir. 1970), on the ground that the statute was arbitrary and discriminatory in the absence of a showing by the state of demonstrated harm. As previously stated, this case is now before the Supreme Court of United States.
The real significance of the above cases appears to lie in the willingness of the judiciary to exercise its power to declare legislation as being constitutionally invalid. That power is not abused where legislation has no rational basis in protecting public health, safety, morals or some phase of public welfare. On the other hand, it is clear that a court overreaches its authority when it substitutes its judgment for that of the legislature as to what is socially or economically prudent. This proposition was recently expressed by the Supreme Court inDandridge v. Williams (1970), 90 S.Ct. 1153, at page 1161: *Page 197 
". . . For this Court to approve the invalidation of state economic or social regulation as `over-reaching' would be far too reminiscent of an era when the Court thought the Fourteenth Amendment gave it power to strike down state laws `because they may be unwise, improvident, or out of harmony with a particular school of thought.' Williamson v. LeeOptical of Oklahoma, Inc., 348 U.S. 483, 488, 75 S.Ct. 461, 466,99 L.ed. 563. That era long ago passed into history. Ferguson v. Skrupa,372 U.S. 726, 83 S.Ct. 1028, 10 L.ed. 2d 93."
In a case decided this year, the Supreme Court of the State of Wisconsin declared that a statute is presumed to be constitutional and that a heavy burden is placed on one who challenges its validity. The court further noted that its function is not to weigh evidence but only to determine whether there is any reasonable basis for the enactment, and further, that legislation is not to be struck down on the basis of belief that a statute is good, bad, wise or unwise. Watchmaking Examining Bd.v. Husar (1971), 49 Wis.2d 526, 182 N.W.2d 257.
These recent pronouncements of both the Supreme Court of the United States and the Supreme Court of Wisconsin persuade me to conclude that both sec. 450.11, Stats., and that portion of Senate Bill 130 which embraces present law are probably constitutionally valid.
Senate Bill 130 proposes a significant change in present law by removing the prohibition against the sale of contraceptives to unmarried persons. Since this change does not involve any encroachment upon individual freedoms, it does not raise a constitutional issue.
You have asked me to comment on the effect of passage of Senate Bill 130 on the criminal statutes relating to adultery and fornication. While there are factual issues in this matter to be resolved by legislative determination, there is only one legal effect to be considered, i.e., whether the passage of Senate Bill 130 would be a tacit repudiation of secs. 944.15 and 944.16, Stats.
Since the Bill condones the sale of contraceptives to unmarried persons, it could be argued that the use of contraceptives *Page 198 
by unmarried persons also is condoned. Thus, the legal argument could be made that the criminal statutes relating to adultery and fornication are repealed by implication. However, repeals by implication are not looked upon with favor in the law. As was stated in Kienbaum v. Haberny (1956),273 Wis. 413, 420, 78 N.W.2d 888:
". . . an earlier act will be considered to remain in force unless it is so manifestly inconsistent and repugnant to the later act that they cannot reasonably stand together."
Any argument to the contrary could be foreclosed by the addition of a subsection to the effect that the section shall not supersede secs. 944.15
and 944.16, Stats. Apparent conflicts in the law are easily resolved when legislative intent is made clear.
RWW:WLJ