# WAUSAU SCHOOL DISTRICT MAINTENANCE & CUSTODIAL UNION, Petitioner-Respondent,

## v.

# WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Appellant.

Court of Appeals

*No. 90-0152. Submitted on briefs May 22, 1990.—Decided July 3, 1990.*

(Also reported in 459 N.W.2d 861.)

On behalf of the appellant, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *John D. Niemisto,* assistant attorney general.

On behalf of the respondent, the cause was submitted on the brief of *Melissa A. Cherney* of the Wisconsin Education Association Council.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   The Wisconsin Employment Relations Commission (WERC) appeals a judgment reversing its decision and ordering mandatory arbitration of a dispute between the Wausau School District Maintenance and Custodial Union and the Wausau School District. The dispute centers around the wages, hours and conditions of employment for a position newly accreted to the bargaining unit. WERC contends that the circuit court did not grant sufficient deference to its decision that mandatory arbitration under sec. 111.70(4)(cm)6, Stats., is only available for "new collective bargaining agreements," and does not cover positions added to a bargaining unit with an existing contract. We agree with the circuit court that WERC's inconsistency on this issue eliminates the deference we might otherwise accord its interpretation of the statute. We also hold that

although the phrase "new collective bargaining agreement" is ambiguous, the policies underlying the Municipal Employment Relations Act (MERA), sec. 111.70, Stats., support mandatory arbitration in situations when the wages, hours and conditions of employment of newly accreted positions that have not been covered by a collective bargaining agreement are being negotiated.

The facts are undisputed. A printer's position, containing only one employee, was added to the union in 1988. The union and the district had an existing collective bargaining agreement. Under commission precedent, when unrepresented positions are added to an existing bargaining unit, the bargaining agreement does not cover these positions. After unsuccessfully negotiating the printer's wages, hours and conditions of employment, the union filed a petition for interest arbitration.

WERC found that the union was not seeking a "new collective bargaining agreement" and denied the petition. The union appealed to the circuit court, which reversed and ordered mandatory arbitration. WERC appeals the circuit court's decision, and we affirm.

■

The first issue is the degree of deference to which WERC's initial decision is entitled. In some cases, this court grants "great weight" to an agency's interpretation of a statute it is charged with administering. *Drivers Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82–83, 452 N.W.2d 368, 371 (1990). However, this deferential standard of review is only applicable if "the administrative practice is long continued, substantially uniform and without challenge by governmental authorities and courts." *Id.* at 83, 452 N.W.2d at 372 (quoting *City of Beloit Educ. Ass'n v. WERC,* 73 Wis. 2d 43, 67–68, 242 N.W.2d 231, 242–43 (1976)). Otherwise, our standard of review is de novo. *Id.* at 84, 452 N.W.2d at 372.

In this instance, our standard of review is de novo. WERC's interpretation of the statute has not been "substantially uniform."[1] WERC initially addressed the breadth of sec. 111.70(4)(cm)6, Stats., in *Dane County,* Dec. No. 17400 at 11 (WERC 1979), *aff'd, Dane County Special Educ. Ass'n v. WERC,* No. 80–CV–0097 (Dane County Cir. Ct. June 9, 1980):

> Absent some other indication of legislative intent, the wording of this provision would appear, on its face, to limit the application of the mediation arbitration procedure to situations where the parties are negotiating a collective bargaining agreement which either constitutes the first collective bargaining agreement between the parties or a new agreement to replace an existing or expired agreement . . .. [N]owhere in the procedures outlined in Sec. 111.70(4)(cm)6, Stats., is there any indication that the legislature anticipated its application to deadlocks other than those which might occur in collective bargaining for a new agreement in this sense . . .. [W]e conclude that the mediation-arbitration provisions contained in Sec. 111.70(4)(cm)6, Stats.,

[1]WERC's interpretation was also considered by the circuit court not to be "long continued." It cited *Village of Whitefish Bay v. WERB,* 34 Wis. 2d 432, 444–45, 149 N.W.2d 662, 669 (1967), which found that an agency had a "poverty of administrative experience" because it had applied a statute a mere six times. In this case, WERC had applied the statute *to a similar fact situation* twice prior to its decision. WERC has, however, applied the interest arbitration statute to other fact situations on numerous occasions, and we therefore do not consider *Whitefish Bay* an alternative grounds for our refusal to grant deference. *See also Drivers Local No. 695,* 154 Wis. 2d at 83, 452 N.W.2d at 372 (no great weight given to agency decision if agency has no experience applying statute to specific facts of first impression).

are only applicable to deadlocks which occur in: . . . (3) negotiations for an initial collective bargaining agreement where no such agreement exists.

*Dane County,* however, did not deal with the issue of accreted positions.

In *Greendale School Dist.,* Dec. No. 20184 (WERC 1982), WERC addressed the issue of whether an agreement concerning newly accreted positions is a "new collective bargaining agreement." WERC, in a 2–1 decision with Commissioner Herman Torosian dissenting, found that it was not. That determination was upheld by the circuit court. *Milwaukee Dist. Council 48 v. WERC,* No. 603–055 (Milwaukee County Cir. Ct. Oct. 17, 1983). The case was then appealed to this court. The attorney general, on behalf of WERC, informed this court that he would not be filing a brief and that WERC's initial decision did not represent "the view of the majority of the present commission either as regards the proper statutory interpretation or the proper outcome." We dismissed the case as moot for other reasons.[2]

Subsequently, in *City of Eau Claire,* Dec. No. 22795–C at 18 (WERC 1986), the commission stated: "We think it appropriate that the Examiner and parties be apprised that Commissioner Torosian's dissent in *Greendale Schools* represents the view of at least a majority of the present commission." Disregarding *Eau Claire,* however, WERC has now reverted to its initial position in the current case. *Wausau School Dist.,* Dec. No. 25972 (WERC 1989). Since WERC decided this case, it has ruled at least one other time in accordance with its *Greendale School* opinion. *Wood County.* Dec. No. 26178 (WERC 1989).

[2]*Milwaukee Dist. Council 48 v. WERC,* No. 83–2007, unpublished slip op. (Wis. Ct. App. 1984).

WERC does not deny that as the composition of the commission changed, its opinion on this issue has also varied. However, WERC argues that because it never explicitly reversed *Greendale School,* the law, as opposed to the commissioner's individual opinions, has remained substantially unchanged. We disagree. The letter to the court and the language in the *Eau Claire* decision alerted litigants to WERC's new opinion on the correct interpretation of the statute. It would require an enormous stretch of logic to label WERC's contortions on this issue as "substantially uniform," and we therefore decline to accord deference to its most recent interpretation.

Having determined that our review is de novo, we next examine the statute itself. Section 111.70(4)(cm)6, Stats., states in part:

> Interest arbitration. If a dispute has not been settled after a reasonable period of negotiation . . . and the parties are deadlocked with respect to any dispute between them over wages, hours and conditions of employment to be included in a new collective bargaining agreement, either party, or the parties jointly, may petition the commission, in writing, to initiate compulsory, final and binding arbitration, as provided in this paragraph.

The central dispute in this case is over the definition of the term "new collective bargaining agreement" as it is used in this section.

WERC, as set forth in the *Greendale School* decision, contends that the phrase applies only to situations where no collective bargaining agreement exists between the municipality and the bargaining unit. Therefore, because there is already an agreement between the union

and the district, WERC held it cannot order interest arbitration under MERA.

A statute is ambiguous, and open to interpretation, if it is capable of being understood by reasonably well-informed individuals in more than one manner. *State ex rel. Newspapers, Inc. v. Showers,* 135 Wis. 2d 77, 87, 398 N.W.2d 154, 159 (1987). We agree with WERC that "new collective bargaining agreement" can, from the language of the statute, reasonably be interpreted to exclude the situation at issue here. Where WERC went astray, in our opinion, is by giving sec. 111.70(4)(cm)6, Stats., its narrowest possible meaning in derogation of the public policy goals of MERA. MERA's legislative purpose is set forth in the statute:

> Declaration of policy. The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employees so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them a fair, speedy, effective and, above all, peaceful procedure for settlement as provided in this subchapter.

Sec. 111.70(6), Stats.[3]

---

[3]Numerous decisions discuss the commission's public policy goal of preventing acrimonious labor disputes. *See, e.g., City of Medford v. Local 446,* 42 Wis. 2d 581, 593, 167 N.W.2d 414, 420 (1969); *Whitefish Bay,* 34 Wis. 2d at 441, 149 N.W.2d at 667; *Muskego-Norway Consol. Schs. Jt. Sch. Dist. v. WERB,* 32 Wis. 2d 478, 485c, 151 N.W.2d 84, 85 (1966).

Arbitration is an important part of the dispute resolution mechanism:

> Our adherence to the *Trilogy*[4] is in keeping with the strong legislative policy in Wisconsin favoring arbitration in the municipal collective bargaining context as a means of settling disputes and preventing individual problems from growing into major labor disputes.

*Joint School Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis. 2d 94, 112, 253 N.W.2d 536, 545 (1977). MERA was designed to avoid lengthy and bitter labor disputes such as the Hortonville School District strike, which prompted its passage. Interest arbitration, in this situation, accords with this goal by allowing for the peaceful resolution of disputes between municipalities and unions over newly accreted positions.

We also note MERA's anti-fragmentation policy that encourages a limited number of bargaining units in each municipality. Policies that tend to make accretion a more difficult and less appealing option violate this policy by encouraging the formation of new bargaining units instead. WERC notes that it has other mechanisms to discourage fragmentation, most importantly denying unions status as bargaining representatives. *See* sec. 111.70(4)(d)2a, Stats. This, however, leads us back to the initial problem. After being denied bargaining unit

---

[4]The *Trilogy* referred to is the *Steelworkers Trilogy* of United States Supreme Court decisions: *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navig. Co.,* 363 U.S. 574 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960).

status, the employees can either give up their request to unionize, strike or accept accretion with no mechanism for resolving deadlocks. Such a result is in conflict with the policies underlying MERA and must be rejected.

We agree with the position taken by Commissioner Torosian in his dissent in *Greendale School,* Dec. No. 20184 at 7:

> Unlike *Dane County* this is not a case where, during the term of an agreement, a new matter or issue arises over which the Union wants to bargain and if necessary proceed to mediation-arbitration. Here we have a group of employes who prior to their accretion were not represented for purposes of collective bargaining agreement. Under such circumstances the Commission has long held, as noted by the majority, that accreted employes are not automatically covered by the terms of an existing collective bargaining agreement covering employes in the accreted-to unit, and that said accreted employes have the right, and the employer has the duty, to bargain over their wages, hours and conditions of employment. It follows then that the parties must in good faith make an attempt to reach an agreement over matters that are mandatorily bargainable. The resultant agreement, if negotiated, is in my opinion, a new initial agreement; a new initial agreement because it covers employes who were not previously represented and who were not covered by an agreement. The fact that they have gained bargaining rights by way of an accretion to a larger unit of employes, does not in my opinion change the fact that said employes are negotiating for a new agreement. As such they have a right to utilize the mediation-arbitration process to secure same. Thus, it is clear to the undersigned that such an agreement is a new agreement within the contemplation of Sec. 111.70(4)(cm)6.

We hold that the interest arbitration provisions in sec. 111.70(4)(cm)6, Stats., apply in situations where municipalities and unions are negotiating the wages, hours and conditions of employment for positions newly accreted to the bargaining unit. Therefore, we affirm the circuit court's order of interest arbitration in this case.

*By the Court.*—Judgment affirmed.