LOCAL 60, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Petitioner-Respondent,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Appellant.†

Court of Appeals

No. 97–1877. *Submitted on briefs December 16, 1997.—Decided February 26, 1998.*

(Also reported in 579 N.W.2d 59.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *John D. Niemisto*, assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Bruce F. Ehlke* and *Aaron N. Halstead* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer* of Madison.

Before Eich, C.J., Roggensack and Deininger, JJ.

ROGGENSACK, J. The Wisconsin Employment Relations Commission (WERC) appeals a decision of the circuit court which reversed WERC's conclusion that the arbitration procedures specified in § 111.70(4)(cm)6., STATS., do not apply to a deadlock in negotiations over wages for a position created subsequent to the institution of the existing labor agreement, when the position in all other respects will be covered by the existing contract. Because we conclude that the Municipal Employment Relations Act (MERA) must be read broadly, and in keeping with the strong legislative policy in Wisconsin which favors arbitration as the mechanism for resolving disputes and preventing individual problems in municipal collective bargaining agreements from growing into major labor conflicts, we affirm the decision of the circuit court.

## BACKGROUND

Local 60, AFSCME, AFL-CIO and the Sun Prairie School District were parties to a collective bargaining agreement which commenced on July 1, 1993 and concluded on June 30, 1996. During the contract term, the administration of the District made a management decision to create a new position within the collective bargaining unit. The new position was called a "cleaner position" and was instituted after the District determined that additional assistance in cleaning was required because of the inability of the current custodian positions, which entailed cleaning in addition to other functions, to adequately meet the needs of the schools. After making the management decision to create a new position, Local 60 and the District agreed to a consultant, to determine an appropriate pay rate for the position. Based on the consultant's recommendation, the District assigned the position a pay grade II wage, $6.54 per hour plus a premium for working at night. This wage rate was less than that of the existing custodian positions because the cleaners were to have fewer responsibilities than the custodians. Subsequent to the District's assigning $6.54 per hour plus a premium for working nights to the newly created position, the District and Local 60 met to discuss its wages, hours and conditions of employment.

The parties agreed to the hours and the working conditions, but they deadlocked on the proposed wage. Once that impasse was reached, Local 60 petitioned WERC for arbitration pursuant to § 111.70(4)(cm)6., STATS. The District moved to dismiss the petition, asserting that arbitration under § 111.70(4)(cm)6. was available only under three conditions: (1) where a new collective bargaining agreement was being negotiated, (2) where an ongoing collective bargaining agreement

was reopened under a specific re-opener provision, or (3) where a collective bargaining agreement that was to take effect subsequent to an ongoing collective bargaining agreement was being negotiated. The District asserted that none of those descriptions fit the situation here because the cleaner position was represented under the existing collective bargaining agreement, which did not expire until June of 1996. Local 60 disputed that interpretation, stating that for this new position, the bargaining agreement was also new, even though most of its provisions would track the existing collective bargaining agreement.

WERC agreed with the District and found, as a finding of fact, that the position of cleaner differed from the existing bargaining unit custodian positions because the cleaners would not perform any of the following: minor repairs or routine maintenance; seasonal jobs such as grass cutting or snow removal; program support activities such as preparing for special events, meetings and so forth; building security responsibilities; or reporting to faculty or other school staff in a supervisory context. Based on its findings, WERC then concluded that because the cleaner position "falls within the scope of the bargaining unit represented by Local 60," and the current labor agreement which had commenced in 1993 applied to the cleaner position, the parties were not bargaining for a "new collective bargaining agreement" within the meaning of § 111.70(4)(cm)6., STATS. Local 60 appealed WERC's decision to the circuit court which reversed WERC based on our decision in *Wausau Sch. Dist. Maintenance and Custodial Union v. WERC*, 157 Wis. 2d 315, 459 N.W.2d 861 (Ct. App. 1990). This appeal followed.

## DISCUSSION

**Standard of Review.**

This court reviews the decision of an agency, not the decision of the circuit court. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). An agency's factual findings must be accepted if there is substantial evidence to support them. *See Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54–55, 330 N.W.2d 169, 173–74 (1983). This court is not bound by an agency's conclusions of law in the same manner as it is by its factual findings. *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). We review WERC's conclusions of law under one of three standards of review: (1) great weight deference, (2) due weight deference or (3) *de novo* review. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 286, 548 N.W.2d 57, 62 (1996).

The most deferential level of review of a legal conclusion of WERC is great weight deference. That standard is not applicable unless all four of the following requirements are met:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute.

*Id.* at 284, 548 N.W.2d at 61, *citing Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995). We apply a mid-level of scrutiny, due

weight deference, and assent to an agency's interpretation that we conclude is reasonable even though there may be another interpretation which is also reasonable, when an agency has some experience in making the legal conclusion under scrutiny, but has not developed the level of expertise necessary to place it in a better position to make judgments regarding the interpretation of the statute than a court. *UFE,* 201 Wis. 2d at 286, 548 N.W.2d at 62.

We conduct a *de novo* review, granting WERC no deference, when the legal issue before the agency is clearly one of first impression, *Kelly Co. v. Marquardt,* 172 Wis. 2d 234, 244–45, 493 N.W.2d 68, 73 (1992), or when an agency's position has been so inconsistent on the legal conclusion under scrutiny that it provides no real guidance. *Martin Transport Ltd. v. DILHR,* 176 Wis. 2d 1012, 1018–19, 501 N.W.2d 391, 394 (1993). Additionally, it is well established that no deference is given to an agency's interpretation of a statute when that interpretation conflicts with a prior appellate decision. *See Doering v. LIRC,* 187 Wis. 2d 472, 477, 523 N.W.2d 142, 144 (Ct. App. 1994). Therefore, we review *de novo* whether an agency properly applied prior case law to the facts presented by the case at hand. *Id.*

**MERA.**

### 1. General Principles.

MERA was enacted by the legislature in an effort to encourage voluntary settlement of disputes and to avoid strikes and animosity between the employees and their municipal employers. That policy is clearly set forth in the statutes:

DECLARATION OF POLICY. The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employees so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them a fair, speedy, effective and, above all, peaceful procedure for settlement as provided in this subchapter.

Section 111.70(6), STATS.

Under MERA, binding arbitration is an important part of resolving disputes in a peaceful fashion. Judicial decisions concerning when to arbitrate are bottomed on the statements of the legislature and the Steelworkers Trilogy[1] to which Wisconsin appellate courts have looked for guidance. *Wausau*, 157 Wis. 2d at 323, 459 N.W.2d at 864. "Our adherence to the *Trilogy* is in keeping with the strong legislative policy in Wisconsin favoring arbitration in the municipal collective bargaining context as a means of settling disputes and preventing individual problems from growing into major labor disputes." *Joint Sch. Dist. No. 10, City of Jefferson v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 112, 253 N.W.2d 536, 545 (1977) (citations omitted).

Because of the strong policy favoring arbitration, when we examine whether arbitration is available, unless we can hold with assurance that arbitration is

---

[1] *United Steelworkers v. American Mfg. Co.*, 363 U.W. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

not available, the policies underlying MERA require a statutory interpretation favoring arbitration. *Id.* at 113, 253 N.W.2d at 545; *Wausau,* 157 Wis. 2d at 323, 459 N.W.2d at 864.

### 2. The Cleaner Position.

This dispute, just as the dispute presented in *Wausau,* centers on the provisions of § 111.70(4)(cm)6., STATS., which provide binding arbitration for only certain types of collective bargaining agreements. WERC concluded that *Wausau* was not on point because the cleaner position had never existed outside of the bargaining unit. However, if we conclude that our statutory interpretation set forth in *Wausau* controls the question presented here, then we must apply the statute in the same manner as we did in *Wausau* and not defer to WERC. *See Doering,* 187 Wis. 2d at 477, 523 N.W.2d at 144.

In *Wausau,* we interpreted the statute for the position of "printer," which was added to the bargaining unit during the term of the collective bargaining agreement. At the time the position was added to the unit, it was occupied by a person who was already employed by the Wausau School District in an unrepresented capacity. After determining that the correct standard of review for § 111.70(4)(cm)6., STATS., was a *de novo* review, we concluded that the terms "new collective bargaining agreement" were ambiguous. *Id.* at 322, 459 N.W.2d at 864. Because the statute was ambiguous, we presumed that the legislature intended it to be interpreted in a manner that advanced the purposes of the statute. *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 635, 547 N.W.2d 602, 606 (1996). Therefore, after examining the stated purposes of the legislature in enacting § 111.70(4)(cm)6., we concluded that bind-

ing arbitration was available for the position of printer. We reasoned that if we were to read § 111.70(4)(cm)6. narrowly, as the district was suggesting, the printer would have no choice except to give up his request to become a member of the union, strike or accept his addition to the bargaining unit with no mechanism for resolving the deadlock in negotiations over his wages, hours and conditions of employment. We reasoned that such a result would be in conflict with the policies that underlie MERA and therefore, we rejected it. *Wausau*, 157 Wis. 2d at 324, 459 N.W.2d at 864. We also noted that MERA had an "anti-fragmentation policy" that encouraged a limited number of bargaining units in each municipality so that denying arbitration under § 111.70(4)(cm)6. could have run contrary to MERA's anti-fragmentation policy by forcing the printer to form his own bargaining unit. *Id.*

The claim presented here is factually similar to that presented in *Wausau* in four significant respects. First, there was an ongoing collective bargaining agreement in place when the disputes about the application of § 111.70(4)(cm)6., STATS., arose. Second, all of the parties understood that the employees who would occupy the positions that were central to the disputes would be represented as part of the existing bargaining unit. Third, neither agreement had salary schedules nor hours of employment for the positions at issue; and fourth, management and the union deadlocked over an issue within the scope of § 111.70(4)(cm)6., which was not specified for the position in question in the existing agreement. Those similarities support reaching the same result as we did in *Wausau*.

The only material factual difference is that in *Wausau* the printer was already employed by the district, but outside of the bargaining unit, while here, the

District created the cleaner position within the bargaining unit, for persons yet to be hired. That factual difference is relevant to, and in accord with, MERA's anti-fragmentation policy because the employees who would occupy the cleaner position did not have to petition to join the bargaining unit, as the printer did. Therefore, their potential for forming a separate bargaining unit was not a concern. However, that difference is not relevant to our concerns for effective bargaining about a fair wage and the peaceful resolution of disputes in the municipal work place, which we described in *Wausau*.

Furthermore, WERC has identified nothing on which we can rely as a statement of legislative intent that MERA was meant not to permit arbitration under § 111.70(4)(cm)6., STATS., for positions created by management during the course of a collective bargaining agreement. Accordingly, we conclude that our interpretation of § 111.70(4)(cm)6. in *Wausau* controls the outcome of this dispute. Therefore, under MERA, the negotiation of an initial agree ment for wages, hours and terms of employment for a position created by management during the term of an existing collective bargaining agreement, which the union and management agree will apply to the new position in all other respects, is the negotiation of a "new" agreement for the newly created position within the meaning of § 111.70(4)(cm)6. We come to this conclusion because MERA is to be read broadly and because arbitration is the favored means of dispute resolution under MERA. *Wausau*, 157 Wis. 2d at 322, 459 N.W.2d at 863.

## CONCLUSION

We have concluded that our decision in *Wausau* is controlling on the question presented here; therefore, we reviewed WERC's decision *de novo* to determine whether it had correctly applied our holding in *Wausau* to the facts in this case. Because we could find no clear assurance that the legislature intended to limit the role of arbitration for dispute resolution in circumstances such as herein presented, and because the policies that underlie MERA are promotive of arbitration, we conclude that arbitration under § 111.70(4)(cm)6., STATS., should have been available to the cleaner position. Therefore, we affirm the decision of the circuit court.

*By the Court.*—Order affirmed.