COURT OF APPEALS
DECISION
DATED AND FILED

August 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1057**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV1241

IN COURT OF APPEALS
DISTRICT II

---

BEVCO PRECISION MANUFACTURING CO.,

    PLAINTIFF-RESPONDENT,

  V.

WISCONSIN LABOR AND INDUSTRY REVIEW COMMISSION,

    DEFENDANT-APPELLANT,

WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT,

    DEFENDANT-CO-APPELLANT,

JACOB FISH,

    DEFENDANT.

---

       APPEAL from an order of the circuit court for Waukesha County: MICHAEL J. APRAHAMIAN, Judge. *Affirmed and cause remanded.*

Before Neubauer, Grogan and Lazar, JJ.

¶1        LAZAR, J. The Wisconsin Labor and Industry Review Commission (the "Commission") and the Wisconsin Department of Workforce Development (the "Department") appeal from an order of the circuit court setting aside and reversing the Commission's decision deeming Jacob Fish eligible for unemployment benefits pursuant to WIS. STAT. ch. 108.  We conclude that the facts as found by the Commission establish that Fish's former employer, Bevco Precision Manufacturing Co., terminated Fish due to misconduct as that term is defined by WIS. STAT. § 108.04(5)(e) (2021-22)[1] and interpreted by our supreme court in *DWD v. LIRC (Beres)*, 2018 WI 77, 382 Wis. 2d 611, 914 N.W.2d 625.  We therefore affirm and remand this case for further proceedings consistent with this opinion.

## BACKGROUND

¶2        Fish began employment as an upholsterer with Bevco, a seating manufacturer, in April 2018.  Bevco's no-fault attendance policy, of which Fish indicated his awareness by signing an acknowledgment of receipt,[2] provides that workers are assessed "points" when they are tardy or absent:  a quarter point for being less than fifteen minutes late, a half point for being between fifteen and ninety minutes late, and a full point for each day of unscheduled absence.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The Record shows that Fish signed copies of the policy that were provided to him (generally in conjunction with warnings for accumulating points pursuant to the policy) on at least April 19, 2018; June 19, 2018; August 13, 2018; December 18, 2018; April 30, 2019; May 22, 2019; March 6, 2020; and June 24, 2020.

Although sick days are not excused and do result in the assessment of points, workers are allowed three "sick days" per year for which they are paid.[3] Workers are not assessed points for pre-approved vacation days or legally protected absences such as jury duty, approved medical leave, or bereavement. Points accumulate and are carried over year to year, but a worker can have one point subtracted from his or her total for each calendar month of perfect attendance.

¶3    As Fish's supervisor agreed in her testimony before the Department, "earning a point isn't a good thing." Warnings are issued when a worker accumulates four points, six points, eight points, and ten points. At ten points, a worker may be suspended for three days with no pay. If an employee exceeds ten points, it is Bevco's policy to "immediately terminate[] [the employee] for excessive absenteeism."

¶4    Fish began the year 2020 with a carry-over balance of 5.25 points. He then missed work (or was late) on the following dates for the noted reasons: January 8-10 (illness), January 31 (tardy), February 13-17 (illness), March 3 (unknown), March 20 (tardy), June 10 (unknown), June 22-23 (tardy), July 23 (illness), July 24 (approved vacation day for which he was not assessed points), and July 27-30 (COVID-related absence for which he was not assessed points[4]). On August 6, Fish submitted a request for vacation the next day (August 7), which Bevco denied. Nevertheless, Fish did not report to work on August 7; he called

_____

[3] An illness that lasts multiple days and is proven with a doctor's excuse as to each day of absence only results in one point.

[4] Bevco had a policy in place during the pandemic providing that employees with symptoms of COVID-19 were not to report for work. Bevco was "more lenient" during this time regarding points and would not always assess points for COVID-related absences, although the policy was apparently not officially changed in this respect.

Bevco on that day and left a voicemail saying that he had had some sort of accident on the way to work.[5] This absence led to an additional point under Bevco's attendance policy, bringing Fish to 10.5 total points. Fish was terminated on August 10, 2020, for violating Bevco's attendance and punctuality policy and personal behavior policy (also based on his "excessive and/or continued tardiness & absenteeism").

¶5 Fish filed a claim for unemployment benefits on the same day he was terminated. After an initial investigation, the Department allowed Fish's claim. On redetermination, an investigator for the Department determined that Fish had been terminated for substantial fault and was thus ineligible for benefits. Following a hearing, an administrative law judge ("ALJ") affirmed that determination of ineligibility based on his conclusion that Fish had been discharged for misconduct within the meaning of WIS. STAT. § 108.04(5). On appeal initiated by both Bevco[6] and Fish, the Commission reversed, making the findings of fact recounted above. The majority of the panel concluded that Fish's termination was not due to misconduct because "most of the points the employee accrued in 2020 were for valid reasons with notice given." The dissent, however, asserted that the Commission's decision amounted to "ignor[ing] the mandate of ***Beres***" and stated that pursuant to that case, "[i]f an employer has its own

---

[5] Fish testified that this accident was due to an intestinal issue on the way to work. He also testified that the vacation request he submitted on August 6, 2020, was due to feeling ill and wanting to visit a doctor on August 7 without earning another point for absenteeism.

[6] Bevco appealed due to the ALJ's conclusion that it "failed to provide correct and complete information requested by the department during a fact-finding investigation" such that benefits paid to Fish did not constitute an overpayment.

attendance/absenteeism policy, then the statutory structure of WIS. STAT. § 108.04(5)(e) does not apply."

¶6      Bevco appealed to the circuit court, which sided with the dissent and set aside the Commission's order.  In a thorough analysis, the court interpreted the plain language of WIS. STAT. § 108.04(5)(e)—in a manner purportedly consistent with the ***Beres*** opinion—to permit an employer "to implement an absenteeism policy that, when violated, permits termination for misconduct."  It also held, in the alternative, that the facts established Fish's termination was due to his "substantial fault" under § 108.04(5g)(a).  The Commission and the Department appeal.

### DISCUSSION

¶7      This court reviews the decision of the Commission, not that of the circuit court.  ***Mervosh v. LIRC***, 2010 WI App 36, ¶7, 324 Wis. 2d 134, 781 N.W.2d 236.  Pursuant to WIS. STAT. § 108.09(7)(c)6.a., the Commission's order may be set aside only upon one or more specific grounds, including a determination "[t]hat the commission acted without or in excess of its powers."  A decision based "on an incorrect interpretation of [WIS. STAT.] § 108.04(5)(e)" constitutes such an action "without or in excess of [the Commission's] powers." ***Beres***, 382 Wis. 2d 611, ¶12; *see also **Amazon Logistics, Inc. v. LIRC***, 2023 WI App 26, ¶18, 407 Wis. 2d 807, 992 N.W.2d 168, *review dismissed as improvidently granted*, 2024 WI 15, 411 Wis. 2d 166, 4 N.W.3d 294.

¶8      Facts found by the Commission are to be accepted if they are "supported by substantial and credible evidence." ***Operton v. LIRC***, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426 (citation omitted).  This does not mean that we will remand a matter based on a fact that is unsupported by the preponderance

of evidence; under the "substantial evidence" standard, we will accept a factual conclusion that reasonable minds *could* reach after considering all of the evidence. ***Wisconsin Bell, Inc. v. LIRC***, 2018 WI 76, ¶30, 382 Wis. 2d 624, 914 N.W.2d 1; *see also* WIS. STAT. § 108.09(7)(c)1. ("The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive.").

¶9 The parties disagree about whether all of the facts found by the Commission are, in fact, supported by the Record, and whether we should consider certain facts that the Commission failed to mention that were indisputably proven in the hearing.[7] We need not resolve those disagreements because we conclude that the facts cited above, which were found by the Commission and not disputed, are sufficient to decide the case in Bevco's favor as a matter of law.

¶10 As articulated by our supreme court, we review an administrative agency's legal conclusions de novo, independent of the decisions of the agency or the circuit court. ***Catholic Charities Bureau, Inc. v. LIRC***, 2024 WI 13, ¶23, 411 Wis. 2d 1, 3 N.W.3d 666; ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21. With ***Tetra Tech***, the court ended its former practice of deferring to administrative agencies' legal conclusions.[8] 382 Wis. 2d

---

[7] Bevco argues, for example, that the Commission "conveniently omitted" facts having to do with the reasons (or lack thereof) for some of Fish's absences and the amount of notice given for his August 7 absence. It also argues that the Commission's conclusion that Fish provided a doctor's note for his July 23 absence is not supported by the Record.

[8] The United States Supreme Court recently held that federal courts also do not defer to agency interpretation of statutes. ***Loper Bright Enters. v. Raimondo***, 144 S. Ct. 2244, 2269-70 (2024).

496, ¶3. As we noted even in a pre-***Tetra Tech*** opinion, we grant no deference to an agency when its interpretation of a statute "conflicts with a prior appellate decision," as we conclude the Commission's does here. *See **Local 60, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. WERC***, 217 Wis. 2d 602, 608, 579 N.W.2d 59 (Ct. App. 1998).

¶11    The legal question before us is whether termination for violation of an employer's absenteeism policy that differs from the absenteeism policy in WIS. STAT. § 108.04(5)(e) (with respect to notice and valid reason for absence) constitutes termination for misconduct as defined by that statute and, therefore, results in denial of unemployment benefits. "The law presumes that the employee is not disqualified from unemployment compensation," ***Consolidated Constr. Co. v. Casey***, 71 Wis. 2d 811, 820, 238 N.W.2d 758 (1976); thus, it is the employer's burden to prove that the employee has been discharged for misconduct, substantial fault, or another reason that disqualifies the employee from receiving compensation. *See **Operton***, 375 Wis. 2d 1, ¶38.

¶12    WISCONSIN STAT. § 108.04(5) states that "misconduct" includes:

> (e) Absenteeism by an employee on more than 2 occasions within the 120-day period before the date of the employee's termination, *unless otherwise specified by his or her employer in an employment manual of which the employee has acknowledged receipt with his or her signature*, or excessive tardiness by an employee in violation of a policy of the employer that has been communicated to the employee, if the employee does not provide to his or her employer both notice and one or more valid reasons for the absenteeism or tardiness.

(Emphasis added).

¶13    As noted in the decisions of both the Commission and the circuit court, our supreme court interpreted this statute in ***Beres***.    In that case, an

employee signed a written attendance policy from her employer acknowledging that an employee could be terminated during the employee's ninety-day probationary period for a single absence if he or she did not give at least two hours' advance notice of the absence. *Beres*, 382 Wis. 2d 611, ¶¶6-7. She failed to call the employer more than two hours before missing her shift due to illness during her probationary period and was subsequently terminated. *Id.*, ¶7. The court reversed LIRC's decision that the employee was eligible for unemployment benefits,[9] holding that

> the text of WIS. STAT. § 108.04(5)(e) plainly allows an employer to adopt its own attendance (or absenteeism) policy that differs from the policy set forth in § 108.04(5)(e), and termination for the violation of the employer's policy will result in disqualification from receiving unemployment compensation benefits even if the employer's policy is more restrictive than the policy set forth in the statute.

*Beres*, 382 Wis. 2d 611, ¶13.

¶14 In so doing, the *Beres* court focused on the "key language" of the statute: the clause beginning with "unless," which the court stated "ordinarily means 'except if.'" *Id.*, ¶¶14-19. As the court noted, a helpful "canon of statutory interpretation is that words in a statute that have a common meaning retain that common meaning." *Id.*, ¶18 (citing WIS. STAT. § 990.01(1)). And when the word "unless" is replaced by the phrase "except if" in the statute at issue, the clear meaning is "that an employer can opt out of the statutory definition of

---

[9] Issued the same day as *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21, the *Beres* opinion incorporates and applies *Tetra Tech*'s deference analysis. *DWD v. LIRC (Beres)*, 2018 WI 77, ¶4 n.4, 382 Wis. 2d 611, 914 N.W.2d 625.

'misconduct' by absenteeism and set its own absenteeism policy, the violation of which will constitute statutory 'misconduct.'" *Beres*, 382 Wis. 2d 611, ¶19.

¶15 We do not see the daylight that the Commission insists exists between *Beres* and the case before us. The Commission argues that the *Beres* court did not address the final clause of WIS. STAT. § 108.04(5)(e)—"if the employee does not provide to his or her employer both notice and one or more valid reasons for the absenteeism"—because the *Beres* court stated that "[o]nly the first two clauses [of § 108.04(5)(e)] [we]re relevant" in that case. *See Beres*, 382 Wis. 2d 611, ¶15. Thus, the Commission argues that *Beres* held only that an employer may alter the *number* of absences permitted before an employee commits misconduct, and may not deviate from the statutory policy that absences for valid reason and adequate notice do not count toward that number.

¶16 We do not agree with the Commission's narrow interpretation of the unanimous holding in *Beres*. The court in that case explicitly framed the issue to encompass the question before us: whether the statute "allow[s] an employer to adopt an attendance or absenteeism policy that differs from that set forth in [WIS. STAT.] § 108.04(5)(e) such that termination of an employee for violating the employer's policy results in disqualification for unemployment compensation benefits." *See Beres*, 382 Wis. 2d 611, ¶4. The court noted that the employee in *Beres* was absent due to illness, the same "valid reason" for at least some of Fish's absences. *See id.*, ¶7. And the court did not delve into the adequacy of the employee's notice (or the question of whether her failure to give it in advance was reasonable in light of her illness) beyond observing that the employee did not comply with the employer's policy of calling in at least two hours before a shift. *Id.*, ¶¶7, 24.

¶17    If the ***Beres*** court had meant to rest its decision on the fact that, although the reason for the absence was valid, the employee's notice was inadequate under the statute (versus noncompliant with the employer's policy)—the distinction the Commission urges us to make by asserting that "lack of notice was undisputed"—we cannot fathom why it would not have said so.  Nor is it apparent to us why the court would have said the clause in WIS. STAT. § 108.04(5)(e) regarding reason and notice was not relevant to the issue with which it was presented,[10] or why it would have worded its holding as it did:  that the statute "plainly allows an employer to adopt its own attendance (or absenteeism) policy" and that "violation of [that] policy will result in disqualification." ***Beres***, 382 Wis. 2d 611, ¶13.  There is simply nothing in ***Beres*** to suggest, as the Commission now asserts, that "the commission, not party-employers, [are] to be the arbiter of what constitutes notice and valid reasons for an absence."  That interpretation directly conflicts with the ***Beres*** court's clear statement "that an employer can opt out of the statutory definition of 'misconduct.'" ***Id.***, ¶19.

¶18    The Commission also cites ***Vandervelde v. City of Green Lake***, 72 Wis. 2d 210, 215, 240 N.W.2d 399 (1976), and contends that Bevco's proposed construction of WIS. STAT. § 108.04(5)(e) is incorrect because "limiting clauses in a statute are to be referred to the next preceding antecedent, unless the context or plain meaning dictates otherwise." *See* ***Vandervelde***, 72 Wis. 2d at 215.  The Commission argues that, pursuant to this rule, the "unless" clause of the statute

---

[10] If, as the Commission argues now, an absence due to illness did not count under the statute so long as notice was given, the notice and valid reason clause would have been relevant to the ***Beres*** analysis.

(allowing an employer to adopt a different attendance policy) modifies only the clause preceding it, which deals with the number of days of work that can be missed and does not relate to the clause dealing with valid reasons and notice. As we have already said, we conclude that *Beres* holds that violation of an employer's attendance policy of which an employee is aware (as evidenced by a signed acknowledgement of receipt) constitutes "misconduct" for the purpose of disqualification from unemployment benefits, full stop.

¶19 But even if *Beres* did not so hold, the Commission's statutory interpretation argument is misplaced. This is a case where "the context [and] plain meaning" of the statute do require a construction under which an employer can adopt its own attendance policy addressing both the number of absences allowed and whether absences for certain reasons count against those allowed absences for the purpose of "misconduct." *See Vandervelde*, 72 Wis. 2d at 215. Like Bevco, many employers have "no-fault" attendance policies under which they allow employees a relatively large number of absences for both traditionally excused reasons (like illness) and unexcused reasons. To hold the employee accountable for the number of absences defined in the policy but then to disregard the policy when considering whether absences are "unexcused" for the purpose of determining whether there was misconduct under the statute would be both illogical, given the language of the statute, and unpredictable, since the number of unexcused absences would depend not on the employer's communicated policy but on the commission's after-the-fact determination of whether a given absence

was for valid reason and with notice.[11]  *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory language is interpreted … reasonably, to avoid absurd or unreasonable results.").

¶20    We are not persuaded by the Commission's other arguments against Bevco's construction.  It asserts that this interpretation runs contrary to the rule articulated in *Operton*, 375 Wis. 2d 1, ¶32, that the unemployment insurance statutes should be liberally construed in favor of the payment of benefits.[12]  But *Operton*—which addressed termination for "substantial fault" under WIS. STAT. § 108.04(5g), not misconduct, and was decided by our supreme court before *Beres*—explicitly states that employees "terminated as a result of any of the statutorily delineated actions" constituting misconduct are ineligible for benefits.  *Operton*, 375 Wis. 2d 1, ¶34.  *Operton* does not suggest that the "statutorily delineated actions," *id.*, are to be construed so narrowly as to render statutory language meaningless.  *See Kalal*, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word.").  As discussed above, we conclude that the Commission's interpretation would render the "opt out" provision in § 108.04(5)(e) essentially meaningless.

¶21    We also disagree that Bevco's interpretation of the statute constitutes an improper delegation of legislative authority to employers and should therefore

---

[11] The dissenting commissioner correctly questioned whether an employee could ever be terminated for misconduct for violation of a no-fault attendance policy because he or she could likely always "identify at least one absence with notice and for valid reason" that would not count against the number of days allowed.

[12] The Commission also argues that *Catholic Charities Bureau, Inc. v. LIRC*, 2024 WI 13, ¶23, 411 Wis. 2d 1, 3 N.W.3d 666, is a "pertinent authority."  We agree with Bevco that this opinion, which cited *Beres*, is not relevant to the question of whether Fish engaged in misconduct as defined by WIS. STAT. § 108.04(5)(e) and interpreted by *Beres*.

be avoided. *See* **State ex rel. Warren v. Nusbaum**, 59 Wis. 2d 391, 440, 208 N.W.2d 780 (1973) ("The power to … fix the limits within which the law shall operate, []is a power which is vested by our Constitution in the Legislature and may not be delegated." (citation omitted)). The legislature itself provided employers the ability to adopt attendance policies that fit their businesses for the purposes of this statute. And even if this were deemed a delegation of legislative authority, it has "sufficient standards to limit the exercise of such power," *see* **Milwaukee County v. Milwaukee District Council 48**, 109 Wis. 2d 14, 24, 325 N.W.2d 350 (Ct. App. 1982),—among them, the requirement that the employer's policy must be in writing "in an employment manual of which the employee has acknowledged receipt with his or her signature." WIS. STAT. § 108.04(5)(e).

¶22 Next, we reject the Commission's argument that Bevco's interpretation of the statute should be avoided because it risks non-compliance with the Federal Unemployment Tax Act ("FUTA"). As the circuit court aptly noted, we are "not at liberty to deviate from the statute the Wisconsin legislature enacted and how this state's Supreme Court has determined it should be applied," even if the Commission is right about FUTA.

¶23 Finally, while the parties make arguments about amendments to the statute that were passed by the legislature but not enacted into law, we do not find those arguments persuasive or those unenacted amendments relevant to our analysis of the statutory framework.

¶24 As an alternative argument, Bevco asserted that Fish was terminated for substantial fault as defined by WIS. STAT. § 108.04(5g). Although the Commission did not make any findings regarding Fish's pre-2020 attendance record at Bevco, the circuit court relied on uncontroverted testimony that Fish had

had attendance problems throughout his tenure and determined (like the Department did early in the history of the case) that his termination was due to substantial fault. Since we affirm based on WIS. STAT. § 108.04(5)(e), we need not reach this issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938).

## CONCLUSION

¶25 For the foregoing reasons, we conclude that Fish was terminated for misconduct as that term is defined in WIS. STAT. § 108.04(5)(e) and that he is therefore ineligible for unemployment benefits. We affirm the circuit court, which set aside the Commission's order finding Fish eligible for unemployment benefits, and we remand to that court to return the Record to the Commission for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed and cause remanded.

Recommended for publication in the official reports.

No. 2023AP1057(C)

¶26 NEUBAUER, J. (*concurring*). I agree with the court's decision to affirm the circuit court's order reversing the Commission's determination that Jacob Fish was eligible for unemployment benefits. As the majority explains, our supreme court's decision in ***DWD v. LIRC (Beres)***, 2018 WI 77, 382 Wis. 2d 611, 914 N.W.2d 625, controls this case and compels us to conclude that Fish's employment was terminated for "misconduct" as that term is defined in WIS. STAT. § 108.04(5)(e).

¶27 I write separately to clarify why the Commission's interpretation is unsupported and unreasonable, as addressed by the Majority at ¶¶20-21. Under WIS. STAT. § 108.04(5)(e), when there is no employer absenteeism policy, an employee is permitted up to two unexcused absences (i.e., without notice and valid reason) within the identified timeframe. Under ***Beres***, an employer could adopt a policy whereby one unexcused absence would constitute "misconduct" under the statute. Under the Commission's interpretation of the "opt out" provision, the statute effectively precludes a no-fault employer absenteeism policy *regardless of the number of permitted absences*. Thus, if an employer permits three, five, ten, or even more absences, *all* must be unexcused in order to amount to "misconduct." In other words, the Commission's interpretation would preclude a finding of "misconduct" if even *one* of an employee's permitted number of absences is with notice and a valid reason, regardless of whether the employer's policy permits three, five, ten, or even more absences. Under the Commission's interpretation, an employer could adopt a policy establishing "misconduct" with one unexcused absence, as was the case in ***Beres***, but not a no-fault policy allowing more

unexcused absences. If the legislature had intended to preclude no-fault employer absenteeism policies, and more to the point, to preclude a determination of "misconduct" for a far greater number of unexcused absences than the two unexcused absences permitted under the statute when there is no employer policy, or the one unexcused absence permitted in ***Beres***, it would have said so.

¶28 As the Majority makes clear, the Commission's interpretation is contrary to ***Beres'*** holding that an employer may adopt a "more restrictive [policy] than the policy set forth in the statute." ***Beres***, 382 Wis. 2d 611, ¶13. The supreme court's analysis in ***Beres*** made clear that the final clause in WIS. STAT. § 108.04(5)(e) dealing with notice and valid reason was not relevant to its determination that an employer may opt out. ***Id.***, ¶15. Presumably, the court would have addressed that clause if it applies to employers' policies, to limit (or not) the "misconduct" determination, given that the employee did not provide the required notice.[1]

¶29 I see no basis in the statutory language for the Commission's unreasonable interpretation of the "opt out" provision in light of ***Beres***. *See **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory language is interpreted … reasonably, to avoid absurd or unreasonable results."). Because the Majority correctly applies ***Beres'*** holding to the facts in this case, I concur in today's result.

---

[1] As the outcome of ***DWD v. LIRC (Beres)***, 2018 WI 77, 382 Wis. 2d 611, 914 N.W.2d 625, makes clear, the Commission's analysis would not render the opt out meaningless because discharges for misconduct would remain possible, but only under the limited and unreasonable circumstances discussed herein.

2